UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JOSEPH VERDI,

                Plaintiffs,

       - against -

JOHN E. POTTER, Postmaster General, United
States Postal Service,

                Defendant.
----------------------------------X

**MEMORANDUM** & **ORDER**
08 Civ. 2687 (DRH) (WDW)

**APPEARANCES:**

**Law Office of John J. McGrath**
Attorney for Plaintiff
114 Old Country Road,
Suite 212
Mineola, New York 11501
By:    John J. McGrath, Esq.

**Benton J. Campbell, Esq.**
United States Attorney
Eastern District of New York
Attorney for Defendant
610 Federal Plaza
Central Islip, New York 11722
By:    Diane Leonardo-Beckmann, A.U.S.A.

**HURLEY, Senior District Judge:**

        Plaintiff Joseph Verdi ("Plaintiff" or "Verdi") brought the present suit against his employer, defendant John E. Potter, Postmaster General ("Defendant") alleging employment discrimination on the basis of Plaintiff's disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (the "Rehabilitation Act"), the Americans with Disabilities Act, 42 U.S.C. § 12117 et seq. (the "ADA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5 et seq. ("Title VII") and retaliation for filing a compensation claim in

violation of the Federal Employees Compensation Act, 5 U.S.C. § 8101 et seq. ("FECA") and the Rehabilitation Act. Presently before the Court is Defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for failure to timely exhaust administrative remedies[1] and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

For the reasons that follow, Defendant's motion to dismiss is granted pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## *BACKGROUND*

The following facts are taken from the Complaint and are presumed true for purposes of this motion.

Plaintiff, a mail processing clerk for the United States Postal Service ("Postal Service"), was injured[2] at work at the Postal Service Office in Jericho, New York on December 12, 2005. (Compl. ¶¶ 8, 36; Ex. 1.) His duties as a clerk required him to stand, sit, lift heavy packages, and perform certain manual tasks. (*Id.* ¶ 36.) Following Plaintiff's injury, he was unable to perform any of these duties. (*Id.*) Plaintiff's personal physician, Dr. John J. Mark, examined him and found that based upon his injuries he was unfit to perform any work. (*Id.* ¶12.) Plaintiff submitted a compensation claim for his injuries to the Office of Workers Compensation Programs. (*Id.* ¶ 13.) According to Plaintiff, his supervisor, Postmaster Tina Laudiero, delayed the processing of his claim for worker's compensation benefits. (*Id.* ¶¶ 9-11.)

---

[1] Defendant withdraws its motion to dismiss pursuant to Rule 12(b)(1). (Def.'s Reply Mem. of Law in Supp. of Def.'s Motion to Dismiss, at 2.) Accordingly, the Court will only consider Defendant's motion to dismiss under Rule 12(b)(6).

[2] Plaintiff filed a claim for compensation under the FECA in connection with a groin injury and a fractured hip. (Compl., Ex. 3.)

During his recuperation period, the Postal Inspection Service conducted a video surveillance of Plaintiff. (Id. at ¶ 16.) Plaintiff was videotaped at his home, at his doctor's office and at other locations. (*Id.*) On February 15, 2006, the Postal Inspection Service interviewed Plaintiff's treating physician and showed him the video surveillance of Plaintiff performing physical activities during his recuperation period that were inconsistent with the medical restrictions that Dr. Mark had reported to the Postal Service. (*Id.* ¶¶ 16-17.) Although Dr. Mark immediately authorized Plaintiff to return to work, Plaintiff's supervisor refused to permit him to return to the Jericho Postal Service Office. (*Id.* ¶ 17.)

By letter dated February 17, 2006, Postmaster Laudiero notified Plaintiff that he was being placed in an off duty status, without pay, due to "an ongoing investigation by the Postal Inspection Service." (*Id.* ¶ 19; Ex. 8.) Postmaster Laudiero outlined the investigation in a Memorandum dated February 27, 2006 and stated that it had been initiated "[a]s part of a review of injury compensation cases by the United States Postal Inspection Service." (*Id.* ¶ 20, Ex. 9.) Inspector Deborah Aronovici and another postal inspector went to Plaintiff's residence to ask him questions on March 7, 2006, but Plaintiff declined to be interviewed by them without a union representative present. (*Id.* ¶ 21.)

On March 13, 2006, the Office of Workers Compensation Programs accepted Plaintiff's compensation claim for "closed fracture of acetabulum." (*Id.* ¶ 13, Ex. 4.)

On March 24, 2006, Plaintiff was issued a notice of removal from the Postal Service, effective May 5, 2006, for "Misrepresentation of Your Physical Limitations/ Restrictions." (*Id.* ¶ 22, Ex. 10.) Plaintiff contacted the United Postal Workers Union, AFL-CIO (the "Union") and filed a grievance under the terms of the Collective Bargaining Agreement

between the Union and the Postal Service contesting his notice of removal.  (*Id.* ¶ 29, Ex. 14.)
By letter dated May 9, 2006, the Postal Service's Labor Relations Specialist informed the Union that Plaintiff's grievance had been denied.  (*Id.*)

On June 2, 2006, Plaintiff filed a formal EEO complaint of age discrimination, and thereafter amended his administrative complaint to include a claim of discrimination based on disability.  (*Id.* ¶ 30.)  After an investigation by the EEO, a final agency decision was issued on April 1, 2008 which closed the case with a finding of no discrimination.  (*Id.* ¶ 31, Ex. 1.)  Plaintiff received the final agency decision and right to sue letter from the EEO on April 4, 2008.  (*Id.*)

Plaintiff timely commenced the instant action on July 3, 2008.  The Complaint asserts three causes of action: (1) retaliation for filing a compensation claim in violation of the FECA; (2) retaliation for the filing of a compensation claim in violation of the Rehabilitation Act; and (3) unlawful employment discrimination on the basis of a disability in violation of the ADA and the Rehabilitation Act.  (Compl. ¶¶ 33-45.)  In addition, the Complaint asserts that jurisdiction with this Court is pursuant to Title VII.  (*Id.* ¶ 3.)

Plaintiff withdraws all claims arising under the FECA, ADA, Title VII and all claims of retaliation.  (Pl.'s Mem. of Law in Opp. at 2.)  Accordingly, these claims are hereby dismissed.

Plaintiff's remaining cause of action, employment discrimination on the basis of a disability in violation of the Rehabilitation Act, alleges principally that (i) because he was unable to perform his duties from December 12, 2005 until February 19, 2006, he qualified as a disabled person entitled to protection under the Rehabilitation Act; (ii) he was subjected to disability

discrimination when Defendant delayed the processing of his claim for worker's compensation benefits and when Defendant conducted a video surveillance in response to Plaintiff's filing a compensation claim; and (iii) Defendant failed to provide a reasonable accommodation for his disability. (*Id.* at 3-5.)

Defendant now moves by the instant motion to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim under the Rehabilitation Act.

## *DISCUSSION*

**I.**     *Motion to Dismiss: Legal Standards*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court generally may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007);*Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (same). A

document not appended to the complaint may be considered if the document is "incorporated [in the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint.*" *Roth,* 489 F.3d at 509 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)) (emphasis in the original).

## II.     *The Rehabilitation Act Claims*

A federal employee's claim for discrimination based upon a disability is governed by Section 501 of the Rehabilitation Act. 29 U.S.C. § 791; *see Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998) (holding the Rehabilitation Act is the sole remedy for a federal employee's disability discrimination claim). In particular, Section 501 of the Rehabilitation Act, as amended, bars a federal employer from discriminating against a federal employee on the basis of disability and utilizes the standards set forth in the ADA.[3]  29 U.S.C. § 791(g) ("The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 et seq."). Claims of

---

[3] On September 25, 2008, the ADA was amended and the amendments became effective January 1, 2009. *See* ADA Amendments Act of 2008 ("ADAAA"), Pub. L. 110-325, 122 Stat. 3553 (2008). The ADA Amendments Act expressly provides that its provisions shall not take effect until January 1, 2009. When a case implicates a federal statute enacted after the events in a suit, that statute will not be construed to have retroactive effect absent clear congressional intent. *See Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). Given the 2008 Act's express effective date, there is no clear congressional intent to have it apply retroactively. Accordingly, the Court shall not apply the 2008 Amendments retroactively to the conduct at issue which preceded the 2008 Act's effective date. *Accord, EEOC v. Agro Distr. LLC,* 555 F.3d 462, 469 n.8 (5th Cir. 2009); *Kiesewetter v. Caterpillar, Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008); *Budde v. Kane County Forest Preserve*, 2009 WL 736646, at *4 n.4 (N.D. Ill. Mar. 19, 2009); *Amorosi v. Molino*, 2009 WL 737338, at *4 n.7 (E.D. Pa. Mar, 19, 2009); *Czapinski v. Iron City Indus. Cleaning Corp.*, 2009 WL 614808, at *2 n.2 (W.D. Pa. Mar. 5, 2009); *Geoghan v. Long Island R.R.*, 2009 WL 982451, *9 (E.D.N.Y. Apr. 9, 2009).

discrimination under the ADA include both (a) adverse employment actions "on the basis of disability," *see* 42 U.S.C. § 12112(a), and (b) "not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business, 42 U.S.C. § 12112(b)(5)(A). *See Carter v. Potter*, No. 06-CV-3854 (JG) (LB), 2008 WL 1848639, at *3 (E.D.N.Y. Apr. 23, 2008).

### *(A)* *Adverse Employment Actions*

Section 501 of the Rehabilitation Act incorporates the "remedies, procedures and rights" set forth in Title VII. 29 U.S.C. § 794a(a)(1); *see Rivera*, 157 F.3d at 104. A claim of employment disability discrimination through an adverse employment action under the Rehabilitation Act, therefore, is evaluated under the three-part burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) for employment discrimination cases under Title VII. *See Regional Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48-49 (2d Cir. 2002) (applying *McDonnell Douglas* analysis to Rehabilitation and ADA claims); *see also McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (applying burden-shifting analysis to ADA discrimination claims). Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell-Douglas* framework and its presumptions and burdens disappears, leaving the sole remaining issue of "discrimination vel non;" and thus, (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that discrimination was an

actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

Under this framework, Plaintiff must first establish a prima facie case of discrimination by demonstrating that: (1) he was disabled under the Rehabilitation Act; (2) he was otherwise qualified to perform the essential functions of his job; (3) he suffered an adverse employment action based on his disability; and (4) that his employer is subject to the Act. *See Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994); *see also Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (setting forth analogous elements under the ADA).

Defendant maintains that Plaintiff has failed to meet this burden because he is not able to establish that he was disabled within the meaning of the Rehabilitation Act. The Court agrees.

Under the Rehabilitation Act, a disabled person is defined as one who "(i) has a physical or mental impairment which substantially limits one or more of [his] major life activities[4]; (ii) has a record of such an impairment, or (iii) is regarded as having such an

---

[4]Neither the Rehabilitation Act nor the ADA define the terms "physical impairment," "substantially limits," and "major life activity." However, the EEOC regulations implementing the ADA define these terms, and while not binding on the Court, do provide guidance concerning the interpretation of the statute. *See Ryan v. Grae & Rybicki*, 135 F.3d 867, 870 (2d Cir. 1998); *see also Colwell,*158 F.3d at 643. A "physical impairment" is defined as:

> [a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin,

impairment." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(2); *see also Gentile v. Potter*, 509 F. Supp. 2d 221, 235 (E.D.N.Y. 2007) ("As a threshold matter, [a] plaintiff bears the burden of demonstrating that his disability fits into the narrow definition envisioned by the Rehabilitation Act."). Whether an individual is disabled is determined on a case-by-case basis. *Reeves*, 140

---

and endocrine.

29 C.F.R. § 1630.2(h)(1).

An individual is "substantially limited" in the ability to perform a major life activity if he is:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). "The term 'substantially limits' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.20(3).

Finally, the term "major life activity" is defined to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *see Ryan,* 135 F.3d at 870 (identifying other major life activities such as sitting, standing, lifting and reaching). The major life activities implicated by Plaintiff's Complaint are working, sitting, standing, lifting and performing manual tasks. (Compl. ¶ 36.) The Court notes that the ADAAA includes a statutory definition of "major life activities" that lists "working" and "performing manual tasks" as examples of major life activities and adds "lifting" to the lists of functions that qualify as a major life activity. 42 U.S.C. § 12102(2)(A).

F.3d at 151. Plaintiff contends that he falls within the first two prongs of the disability definition under the Rehabilitation Act.

### *(i)* *Impairment that Substantially Limits Major Life Activities*

Plaintiff asserts that he is disabled within the meaning of the Rehabilitation Act because he "was unable to perform his full duties for a specific period of time from December 12, 2005 until at least February 19, 2006," and as such had a "disabling condition that limited a major life activity, working." (Compl. ¶ 36; Pl.'s Mem. of Law in Opp., Point II.) Plaintiff's assertion is without merit.

In evaluating whether an individual is "substantially limited in a major life activity," the Court considers "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of, or resulting from, the impairment." 29 C.F.R. § 1630.2(j)(2); *see Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1998).

"[S]hort term, temporary restrictions are not 'substantially limiting' and do not render a person 'disabled'" within the meaning of the ADA. *Levy v. Hustedt Chevrolet*, No. 05-4832 (DRH) (MLO), 2008 WL 5273927, at *5 (E.D.N.Y. Dec. 17, 2008); *see Adams v. Citizens Advice Bureau,* 187 F.3d 315, 316-17 (2d Cir. 1999); *Leahy v. Gap, Inc.,* No. 07-CV-2008, 2008 WL 2946007, at *4 (E.D.N.Y. July 29, 2008); *see also Green v. New York City Health & Hosp. Corp.*, No. 04-CV-5144, 2008 WL 144828, at *4 (S.D.N.Y. Jan. 15, 2008) ("To establish a disability under the ADA, there must be some proof of permanency."). "It is the limitation on the claimed major life activity that must be permanent or have a long term impact. The permanency of the mental or physical condition leading to the impairment is not necessarily

sufficient." *Levy*, 2008 WL 5273927, at *5; *see Dantuono v. Davis Vision, Inc.*, No. 07-CV-2234 (TCP) (ETB), 2009 WL 5196151, at *3 (E.D.N.Y. Dec. 29, 2009) (holding "the limitation on the claimed major life activity cannot be temporary") (internal quotation marks and citations omitted). Thus, temporary conditions with no residual, substantial limitations do not constitute an actionable disability. *See, e.g., Jackson v. Nor Loch Manor HCF*, 134 Fed. Appx. 477, 477 (2d Cir. 2005) (finding that a surgical procedure necessitating a temporary leave of absence from work is "not enough to sustain a claim under the ADA"); *Adams*, 187 F.3d at 316-17 (finding an employee was not disabled within the meaning of the ADA where his temporary neck, back and knee injuries, which prevented him from working for three and one-half months, showed no evidence of substantial ongoing limitations); *Colwell*, 158 F.3d at 643 (holding "a seven-month impairment of [plaintiff's] ability to work . . . is of too short a duration and too vague an extent to be 'substantially limiting'"); *George v. TJX Cos., Inc.*, No. 08 CV 275 (ARR) (LB), 2009 WL 4718840, at *8 (E.D.N.Y. Dec. 9, 2009) (finding that because there was no evidence that "plaintiff's fractured arm resulted in a permanent long-term impairment that substantially limited any of his major life activities . . . [his] injury did not have the required duration or long-term impact to qualify as a disability under the ADA").

In the instant matter, it is undisputed that Plaintiff's injury was temporary. Indeed, he states that while he was unable to work for a period of over two months, from December 12, 2005 to February 19, 2006, he "eventually recuperated and would have been able to return to full duty had he not been unlawfully terminated." (Compl. ¶ 45.) Plaintiff's representation that he could have returned to work and could have performed his full job duties precludes an inference that his impairment substantially limits a major life activity. *See Jackson*,

134 Fed. Appx. at 477; *Adams*, 187 F.3d at 316-17; *Colwell*, 158 F.3d at 643; *George*, 2009 WL 4718840, at *8. That is to say, Plaintiff's impairment, which resulted in a period of just over two months disability leave with no alleged residual, ongoing limitations thereafter, is not a disability within the meaning of the Rehabilitation Act.

### *(ii)* *Record of Disability*

In the alternative, Plaintiff argues that he can demonstrate that he has a disability within the meaning of the Rehabilitation Act because he has a record of disability from the Office of Worker's Compensation Programs. Plaintiff's reliance on this record is misplaced.

The Rehabilitation Act's definition of disability can be satisfied if a plaintiff demonstrates "a record" of an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(B). The definition is satisfied "if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment." *Colwell,* 158 F.3d at 645 (citing 29 C.F.R. pt. 1630, App. 1630.2(k)). "The record must be one that shows an impairment that satisfies the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough." *Id.*

The record in this case consists solely of the one-page decision from the Office of Worker's Compensation Programs, dated March 13, 2006. It provides in relevant part:

> Your claim for injury on the date shown above [12/12/2006] has been accepted for:
>
> **CLOSED FRACTURE OF ACETABULUM, ( R ), ICD-9 CODE 808.0**
>
> You may be entitled to receive continuation of pay (COP) for up to 45 calendar days. **However, the medical documentation currently in file does not support that you were totally disabled**

> **after 02/15/2006**. To support disability, you must provide a
> detailed narrative medical report from your attending physician
> which includes: history of injury; findings and results of all tests
> and x-rays; diagnosis; clinical course of treatment; prognosis;
> period and extent of disability; and an opinion on the relationship
> of any continuing disability to the accepted injury.

(Compl., ¶ 13, Ex. 4) (emphasis in original.)

The Worker's Compensation decision does not state that the diagnosed accepted impairment substantially or otherwise limits one or more of Plaintiff's life activities. Rather, it states that "the medical documentation currently in file does not support that you were totally disabled after 02/15/2006." Although the Worker's Compensation decision accepting Plaintiff's claim of injury shows a record of an accepted physical impairment, there is nothing in the decision that establishes a record that this injury substantially limits his ability to work or substantially limits one or more of his life activities. *See Schapiro v. New York City Dep't of Health*, 25 Fed. Appx. 57, 61 n.2 (2d Cir. 2001) ("While [Worker's Compensation Board findings] may establish a record of the physical impairment, they do not establish a record that the physical impairment created a substantial limitation under the ADA."); *see also George*, 2009 WL 4718840, at *6 ("The law is clear . . . that administrative records such as Workers' Compensation awards reflecting an employee's classification as disabled for purposes other than the ADA or under other standards are insufficient for the purposes of establishing the existence of a disability under the ADA."). Thus, the administrative record at issue here is not sufficient to constitute a record of disability within the meaning of the Rehabilitation Act.

In summary, because Plaintiff has not adequately pleaded that he had an actual impairment that substantially limited a major life activity or set forth in his Complaint a record of disability that had substantially limited one or more of his major life activities, Plaintiff has

not pleaded facts sufficient to allege that he was an individual with a disability within the meaning of the Rehabilitation Act. Accordingly, having failed to establish this element of the prima facie case, Defendant's motion to dismiss Plaintiff's claims for discrimination through adverse employment actions is granted.

### *(B)* *Failure to Make Reasonable Accommodation*

Plaintiff claims in his opposition papers that Defendant discriminated against him based on his disability in failing to offer him a reasonable accommodation. (Pl.'s Mem. of Law in Opp., Point II.) This claim is equally unavailing.

To establish a prima facie case for failure to accommodate under the Rehabilitation Act, an employee has the burden to demonstrate "(1) that he is an individual who has a disability within the meaning of the statute, (2) that an employer covered by the statute had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position sought, and (4) that the employer has refused to make such accommodations." *Stone v. City of Mt. Vernon*, 118 F.3d 92, 96-97 (2d Cir. 1997) (applying these factors to a claim under § 504 of the Rehabilitation Act); *see Carter*, 2008 WL 1848639, at *5 (applying these factors to a claim under § 501 of the Rehabilitation Act).

For the reasons discussed above, Plaintiff is unable to satisfy the first element of his prima facie case, to wit, that he is an individual with a disability within the meaning of the Rehabilitation Act. *See supra.*

Accordingly, having failed to establish this element of the prima facie case, Defendant's motion to dismiss Plaintiff's claim for disability discrimination based on the failure to make a reasonable accommodation is granted.

### III.    *Leave to Amend is Denied*

Plaintiff does not move for leave to amend, either formally or informally, with regard to its claims under the Rehabilitation Act.[5] Although this Court would well be within its discretion to deny leave to amend on that ground alone, *see Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994)[6] ("Although federal courts are inclined to grant leave to amend following a dismissal order, we do not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought."), the Court notes that leave to amend is also not warranted in this case because any amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of amendment ground for denial of motion). Here, Plaintiff has not provided the Court with, or suggested the existence of, any new facts which could cure its pleading deficiencies. *Compare In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss. . . . Furthermore, where amendment would be futile, denial of leave to amend is proper.") (citation omitted); *Porat v. Lincoln Towers Community Assoc.*, 464 F.3d 274, 276 (2d Cir. 2006) ("A counseled plaintiff is not necessarily entitled to a remand for repleading

---

[5]The only reference made concerning an amendment is a sentence in Plaintiff's opposition brief in connection with the claim that Defendant had allegedly investigated him without probable cause. *See* Pl.'s Mem. of Law, Point II ("[T]o the extent that it may not be clear in the Complaint in its present form Plaintiff will amend that complaint to make it clear that the Defendant, through its agents, the Postal Inspectors, and others caused him to be investigated without probable cause.").

[6]The *Shields* decision was superseded by statute on other grounds, Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, as recognized in *In Re Paracelsus Corp. Sec. Litig.*, 61 F. Supp. 2d 591, 595 (S.D. Tex. 1998).

whenever he has indicated a desire to amend his complaint, notwithstanding the failure of plaintiff's counsel to make a showing that the complaint's defects can be cured."). As discussed more fully above, Plaintiff's allegations of disability based discrimination fail to allege the threshold requirement that Plaintiff was "disabled" within the meaning of the Rehabilitation Act so as to qualify him for protection under the Act. Accordingly, although no applications have been made, the Court declines to grant Plaintiff leave to amend its claims under the Rehabilitation Act.

## *CONCLUSION*

For the foregoing reasons, Defendant's motion to dismiss the Complaint is GRANTED. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, N.Y.
February 9, 2010

/s/
Denis R. Hurley
United States Senior District Judge